

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF LOUISIANA | **FELONY** |

INDICTMENT FOR CONSPIRACY AND
<u>HOBBS ACT EXTORTION INVOLVING A PUBLIC OFFICIAL</u>

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO: | 04-378 |
| V. | * | SECTION: | SECT. K MAG. 5 |
| JOHN BAKER, JR.<br>DRENA CLAY<br>TRYNITHA FULTON<br>DEBRA HARRISON | * | VIOLATION: | 18 U.S.C. § 1951<br>18 U.S.C. § 2 |
| | * | | |
| * | * | * | |

The Grand Jury charges that:

### COUNT 1

A.   <u>AT ALL TIMES MATERIAL HEREIN</u>:

1.   **DEBRA HARRISON** (hereafter "HARRISON") was the secretary at Fannie C. Williams Middle School, an Orleans parish public school. In that capacity she was in charge of preparing Form SPC-1, the class coverage sheet.

2.   **DRENA CLAY** (hereafter "CLAY") was an assistant secretary at Fannie C. Williams Middle School, an Orleans Parish public school. **CLAY** assisted **HARRISON** in her official duties.



3. **TRYNITHA FULTON** (hereafter "FULTON") was a teacher at Fannie C. Williams Middle School, an Orleans Parish public school.

4. **JOHN BAKER, JR.** (hereafter "BAKER") was a teacher at Fannie C. Williams Middle School, an Orleans Parish public school.

5. All of the defendants named herein held a position of trust with the Orleans Parish Public School System (hereafter "OPPSS").

6. The Orleans Parish Public School System, of which Fannie C. Williams Middle School is a political subdivision of the state of Louisiana, an entity engaged in interstate commerce.

7. The Orleans Parish Public School System has in place a system which provides for the coverage of classes assigned to be taught by teachers who are absent on a particular day. Most teachers in the Orleans Parish system during the school day have one period in which they are provided time to prepare lesson plans and other necessary work for the next day.

8. When a teacher is absent officials of the school will give the opportunity for another teacher who is present to cover the class for the absent teacher.

9. The teacher covering the class is paid an hourly wage for covering the class.

10. The school secretary, in this case **HARRISON**, is tasked with compiling the list of class coverage hours on Form SPC-1 to be submitted to the administrative office for the Orleans Parish Public Schools.

11. The form must be signed by the principal.

12. The Orleans Parish School Board determined that the form was illicitly altered after the principal signed the form.

B.   **THE HOBBS ACT EXTORTION CONSPIRACY:**

In or around December 2002, in the Eastern District of Louisiana and elsewhere, the defendants, **BAKER, CLAY, FULTON** and **HARRISON** did knowingly and willfully conspire, combine, confederate and agree with each other and with persons known and unknown to the grand jury to obstruct, delay and affect interstate commerce by extortion as that term is defined in Title 18, United States Code, Section 1951. **BAKER** and **FULTON** agreed to kick money back to **HARRISON** in order to receive falsely inflated class coverage hours. **CLAY** acting on behalf of and in conspiracy with **HARRISON** initially approached **BAKER** with the shakedown scheme. These acts, among others, resulted in **HARRISON** receiving money not due her or her office from **BAKER** and **FULTON** with their consent induced by wrongful use and threat of use of fear of economic harm and under color of official right; all in violation of Title 18, United States Code, Section 1951.

C.   **OVERT ACTS:**

During the course of the conspiracy, in the Eastern District of Louisiana, the following overt acts, among others, were committed in furtherance of the above described conspiracy:

1.   In or around August 2002, **BAKER** was a newly assigned teacher to Fannie C. Williams Middle School. Upon his arrival at the school **BAKER** was approached by **CLAY** who advised him that if he was willing to kick back several hundred dollars to **HARRISON** then **HARRISON** would falsely inflate his class coverage hours in order for him to receive more money.

2.   **CLAY** made it clear to **BAKER** that if he did not participate in this kick back scheme, then **HARRISON** would exclude **BAKER** in assignment of class coverage hours.

3. **FULTON**, also a new teacher at Fannie C. Williams Middle School, was approached by **HARRISON** who advised **FULTON** that if she would kick money back to her, then **HARRISON** would falsely inflate her class coverage hours in order for her to receive more money. **FULTON** understood that if she did not participate in this kick back scheme, then **HARRISON** would exclude **FULTON** in assignment of class coverage hours.

4. In or around December 2002, a Form SPC-1, the official form designed to designate the class coverage hours worked, was prepared by **HARRISON** for the principal's signature. On that form **BAKER** was reported to have worked 40 hours and was due $320.00; **CLAY** was reported to have worked 20 hours for a total of $190.00; **FULTON** was reported to have worked 70 hours for a total of $665.00. At that point this form represented the true numbers of hours actually worked and the principal signed each form approving payment. However, these forms were illegally altered after the principal's signature to reflect that **BAKER's** hours were falsely inflated to 260 hours for a total of $2,080.00; **CLAY's** hours were falsely inflated to 280 hours for a total of $2,660.00; and **FULTON's** hours were falsely inflated to 260 hours resulting in $2,660.00. Thereafter, **BAKER** paid **HARRISON** $200.00 in cash as the kick back for these fraudulently inflated work hours.

5. In or around January 2003, after **BAKER** paid $200.00 in cash to **HARRISON** as a kick back for fraudulently inflated work hours, **BAKER** was approached by **CLAY**, who indicated to **BAKER**, that the kick back was supposed to be $500.00, not $200.00. **BAKER** refused to pay the additional money to **HARRISON** as requested by **CLAY**.

6.     In or around January 2003, **FULTON** paid $500.00 cash to **HARRISON** as a kick back for fraudulently inflated work hours.

All in violation of Title 18, United States Code, Section 1951.

## COUNT 2

### THE EXTORTION:

Beginning at a time unknown, but prior to December 2002, and continuing through at least in or around January 2003, the defendants, **HARRISON, CLAY, BAKER** and **FULTON**, acting in concert with each other and others known and unknown to the Grand Jury, did knowingly, willfully and unlawfully obstruct, delay and affect interstate commerce and the movement of any article and commodity in interstate commerce by extortion and attempting to do so, did create a plan to steal money from the OPPSS whereby **HARRISON** and **CLAY** recruited **BAKER** and **FULTON** to participate in an illegal kick back scheme. **CLAY, BAKER** and **FULTON** received money based on falsely inflated work hour reports. Thereafter, **BAKER** and **FULTON** paid kick backs to **HARRISON** not due her. **BAKER's** and **FULTON's** consent to participate in this scheme was

induced by the wrongful use and threat of use of fear of economic harm and under color of official right;

all in violation of Title 18, United States Code, Section 1951.

A TRUE BILL:

_____
FOREPERSON

_____
JIM LETTEN
UNITED STATES ATTORNEY
Bar Roll No. 8517

_____
JAN MASELLI MANN
Chief, Criminal Division
Assistant United States Attorney
Bar Roll No. 9020

_____
G. DALL KAMMER
Assistant United States Attorney
Bar Roll No. 26948

_____
CARTER K. D. GUICE, JR.
Assistant United States Attorney
Bar Roll No. 16771

New Orleans, Louisiana
December 16, 2004