UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 04-378 |
| JOHN BAKER, ET AL. | SECTION "K"(5) |

### MEMORANDUM AND ORDER

The Court has before it two motions by the defendants: Defendants Harrison, Carmouche, Garner, Moore, and Clay's[1] Motion to Continue Trial (Rec. Doc. 166) (hereinafter "Motion to Continue") with the Government's corresponding Objections to the Defendants' Motion to Continue (Rec. Doc. 174); and Defendant Tardy's Motion to Exclude Exhibits (Rec. Doc. 162) (hereinafter "Motion to Exclude") with the Government's corresponding Opposition to Defendant Tardy's Motion to Exclude Exhibits (Rec. Doc. 175) and Tardy's Response Memorandum (Rec. Doc. 175) (hereinafter "Tardy's Response").  Having considered the pleadings and the relevant law, the Court is prepared to make its ruling.

### FACTUAL BACKGROUND

In the present case, the Government has alleged that the defendants, who are various employees of Fannie C. Williams Middle School of the Orleans Parish Public School System ("OPPSS"), conspired together to embezzle funds from the OPPSS.  This fraud allegedly was conducted by having some defendants in the school's administration inflate overtime hours on "SPC" forms for other defendants who were teachers at the school.  In return, the teachers would

---

[1] The Defendants' Motion states that it is joined only by Defendants Carmouche, Garner, Moore, and Harrison.  (Rec. Doc. 166 at 1).  However, this Court was informed subsequent to the motion's filing that Defendant Clay also joins in the motion.  Defendant Tardy did not join in the motion.  (Rec. Doc. 166 at 3).

then kickback a significant portion of the additional overtime payments to the defendants in the school administration who fraudulently completed the relevant SPC forms.

Regarding the course of discovery, while the factual allegations of the parties appears foggy at best, this Court can divine at least the following facts.  Around January 2007, the Government released to the defendants various discovery, particularly SPC forms, cashed checks, and bank statements.  (Rec. Doc. 174, Ex. 1 & 2) (Rec. Doc. 162 at 1).  Apparently little to no discovery occurred thereafter until the Court held a pretrial conference on September 20, 2007.  On that date, the Government represented that it had four boxes of documents that were available for review at the Government's offices.  The Government states that it made appointments with all defense counsel, but only two defendants' attorneys showed up to review the documents.  (Rec. Doc. 174 at 4).  The Government separated these documents into two groups: Group I consisting of proposed trial exhibits, *Giglio*, and impeachment material, and Group II consisting of non-exhibits that were "not discoverable under any theory of law."  (Rec. Doc. 173 at 2-3).  It further agreed to make copies of both of these documents for defense counsel to pick up or have them mailed overnight to them.  (Rec. Doc. 173 at 3).  The Government stated that they would have Group I exhibits available on September 25th or 26th, and the Group II exhibits would be available on September 26th or 27th.  (Rec. Doc. 173 at 3).  These dates were between four and six days of trial, set to begin on October 1, 2007.

The two motions before the Court are as follows.  In brief, the Motion to Continue claims that (1) the Government's superseding indictment filed on September 20, 2007 does not give the defendants adequate time to adjust their defenses to the new allegations in the indictment and (2) the Government's slow pace in delivering discovery has prejudiced the defendants' preparation for trial.  The Motion to Exclude also finds fault with the Government's languid discovery

practice, and seeks either (1) exclusion of all of the Government's exhibits, or (2) exclusion of ten particular Government exhibits, to wit, personal financials and W-2 forms of the defendants and a potential government witness.

## ANALYSIS

Because these motions are similar in their complaints, seeking only different forms of relief, the Court will address the defendants' claim of delay due to the superseding indictment first, followed by the defendants' various claims regarding the Government's release of discovery.

**A. Alleged Prejudice Due to Superseding Indictment**

After having reviewed the parties' claims and relevant law, the Court finds that the defendants will not be prejudiced by this trial commencing as scheduled on October 1, 2007. This Court notes that it has "broad discretion" under the Speedy Trial Act to grant continuances where a superseding indictment has been filed. *United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985) (district court has "broad discretion" to grant continuances to serve "the ends of justice" in a case in which "the Government seeks a superseding indictment *which operates to prejudice a defendant*.") (emphasis added). In the present case, the Government filed a superseding indictment as to all defendants on September 20, 2007 (Rec. Doc. 154), ten days prior to trial. The Court finds, however, that the superseding indictment did not add any new substantive charges to the prior indictment. (Rec. Doc. 174 at 2); *see United States v. Fesler*, 781 F.2d 384, 392 (5th Cir. 1986) (finding no prejudice where defendants had 21 days to prepare a defense against two charges added in superseding indictment). Moreover, the Government's case under the new indictment is founded on the same evidence, i.e., the fraudulently completed SPC forms, that had been disclosed to defense counsel well before trial. *See United States v.*

*Givens*, No. CR. A. 01-282, 2003 WL 22586093, at *3 (E.D. La. Oct. 29, 2003) (Vance, J.) (finding no prejudice and denying continuance where defendant "was well aware" of the evidence forming the basis of new charges added in superseding indictment). Indeed, some of these SPC forms that were turned over to defense counsel clearly were created during the Spring 2003 school semester, putting all parties on notice that the alleged conspiracy involved the Spring 2003 school semester, and therefore the extension of the indictment to June 2003 should be no surprise to anyone. (Rec. Doc. 174 at 3, Ex. 1 & 2). Any modification regarding the amounts of money involved in the fraud should similarly rely on substantially the same evidence of which the parties were aware prior to September 20, 2007. Thus, the modifications made in the superseding indictment filed on September 20, 2007 appear to be more technical than substantive at this time, and therefore this Court is not persuaded to continue trial on grounds of prejudice to the defense.[2]

## B. Alleged Prejudice Due to Government Discovery Disclosures

Defendant Tardy's Motion to Exclude and the other defendants' Motion to Continue generally allege that the Government's discovery practices have caused them prejudice, requiring however different types of relief. This Court finds that the Fifth Circuit's *Garrett* line of analysis provides a structure to address all of these issues together.

In *Garrett*, the Fifth Circuit considered the district court's decision to exclude twenty-five of the prosecution's witnesses as a sanction for discovery violations "that the [district] court

---

[2]The Court advises the Government that, where technical corrections to a superseding indictment need to made, a simple motion to amend may be made to the Court instead of encountering the rigmarole that can ensue following a superseding indictment. Hopefully such a device may be utilized in the future. *See Rojos-Contreras*, 474 U.S. at 233 n.2 ("The record does not disclose why the indictment was not corrected by a motion for amendment in the District Court.").

itself found not to have been in bad faith." *United States v. Garrett*, 238 F.3d 293, 295 (5th Cir. 2000). The case was a federal prosecution for milk adulteration in which the prosecution failed to fully comply with the district court's order to timely turn over target letters sent by the prosecution to various government witnesses. On the day of trial, government attorneys also turned over "a stack of documents (8 inches thick), a good portion of which was duplicative of previously provided materials." *Id.* at 297. The district court accordingly struck any government witness who had received a target letters, a total of 25 witnesses, finding that such letters were "*Brady* materials which it had an obligation to produce." *Id.*

On appeal, the Fifth Circuit reversed the district court, characterizing the district court's striking of witnesses as a "rather draconian sanction" for violations found not to have been in bad faith. *Id.* at 295. The Fifth Circuit has outlined that, where a district court evaluates whether sanctions for discovery violations are appropriate, it should consider the following factors: "1) the reasons why disclosure was not made; 2) the amount of prejudice to the opposing party; 3) the feasibility of curing such prejudice with a continuance of trial; and 4) any other relevant circumstances." *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000). Notably, while the Fifth Circuit has recognized this discretion as "broad," district courts must also "impose the least severe sanction that will accomplish the desired result." *Id.* (quoting *United States v. Saricinelli*, 667 F.2d 5, 7 (5th Cir. Unit B 1982)).

This Court finds that, from the evidence that is before it, no sanctions or continuances are appropriate at this time. Addressing each of the *Garrett* factors in turn, this Court's discretion is best exercised by having this case proceed to trial. While it appears that the Government has not been at its most vigilant in making discovery available, there certainly is no evidence of bad faith

5

by the Government. Indeed, the most pertinent and relevant documents were disclosed to some of the defendants even before some of them were indicted. (Rec. Doc. 162 at 5). The other documents made available more recently to the defense appear to be less relevant, indeed including "non-exhibits." (Rec. Doc. 173 at 3).

Considering the level of prejudice suffered by the defense, the Court notes that this prejudice must impact the defendants' "substantial rights," *United States v. Webster*, 162 F.3d 308, 333 (5th Cir. 1998), which requires this Court to assess "whether the defendant had time to put the information to use, not whether some extra effort was required by defense counsel." *Garrett*, 238 F.3d at 299 (citing *United States v. Martinez-Perez*, 941 F.2d 295, 302 (5th Cir. 1991)). The prejudice here is minimal: the documents that were most recently disclosed are generally non-exhibits, and appear to have minimal relevance. Those exhibits that may be more relevant, i.e., the W-2 and financial forms, are simple federal forms and personal financials that should not take significant time nor effort to be put to use, particularly considering many of these documents are the defendants' own documents that they knew of well prior to trial.

The Court does note that one of the exhibits cited in the Motion to Exclude is the financial statements of Trynitha Fulton, labeled as Government Exhibit 17 and attached to this opinion. Ms. Fulton formerly was a named defendant, but has since entered into a plea agreement with the Government. Thus, because Ms. Fulton presumably will be a witness for the prosecution, this particular exhibit may be more difficult for the defendants to put to use. However, the Court's own review of this document shows that it is a simple four-page bank statement from a personal account that shows pedestrian bank activity such as withdrawals, transfers, and deposits. Moreover, it encompasses only one month, December 12, 2002 through

January 13, 2003. Therefore, while this exhibit appears to have been made available as late as three days prior to trial, it is also one that is easily read and interpreted by a layman and should require minimal time for defense counsel to "put the information to use."

This Court also finds that a continuance is not preferable in this matter, particularly considering how long this case has been pending and the full docket of other trials and hearings in Katrina-related matters coming forth before this Court. While admittedly the final defendant was joined in February of this year, this case was first commenced in December 2004, and it is by far the longest-pending criminal matter on this Court's docket. Finally, as far as *Garrett*'s "other relevant circumstances" factor is concerned, this Court recognizes that a sanction such as exclusion of evidence could be tantamount to destroying the Government's case for the alleged dilatory tactics by the Assistant United States Attorneys. *See Garrett*, 238 F.3d at 293 (exclusion of evidence improper where such a sanction would "essentially obliterate[]" the prosecution's case).

In reaching its conclusion, this Court reflects on the conflicting desires of all parties involved here: some defendants seek a continuance for preparation's sake, another defendant wants a prompt trial to clear his name, the Government is now ready to try its case, and this Court will have these defendants tried jointly in its never-ending pursuit of the fair and efficient administration of justice. In striking the balance in favor of denying any remedy, this Court must admit that it relies on the representation by the Government that it released all "key documents" to the defendants that were not otherwise in their possession "far in advance of September 20, 2007." (Rec. Doc. 174 at 5). The Court accepts the Government's representation substantially on the basis that the Government has the best judgment, at this time, of what constitutes a "key

document." Should it be otherwise revealed during trial that this is not the case, this Court of course reserves its discretion under its inherent power and Federal Rule of Criminal Procedure 16 to grant "appropriate relief" and enter "any other order that is just" regarding any failure of any party to properly fulfill their discovery duties in this case. Fed. R. Crim. P. 16(d); *see also United States v. Bentley*, 875 F.2d 1114, 1118 (5th Cir. 1989) (recognizing that a district court has "broad discretion" to "remedy a party's failure to comply with discovery" under Rule 16). Such relief may include limitation instructions, excision of prejudicial portions of exhibits, exclusion of particular exhibits, or any other relief that this Court deems appropriate. The Court gives notice to all counsel that any further motions or interactions among the parties shall be free of any *ad hominem* remarks or animosity whatsoever, and it reminds the parties that it has the power to sanction for that conduct as well. At this time, however, the Court is persuaded that a continuance or exclusion of any exhibits are inappropriate remedies for any alleged discovery violation by the Government. Accordingly,

**IT IS ORDERED** that Defendants Harrison, Carmouche, Garner, Moore, and Clay's Motion to Continue Trial (Rec. Doc. 166) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Tardy's Motion to Exclude Exhibits (Rec. Doc. 162) is **DENIED.**

New Orleans, Louisiana, this  30th  day of   September  , 2007.

_____
STANWOOD R. DUVAL, JR.
**UNITED STATES DISTRICT JUDGE**